**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4562
_____

DEBORAH LANZA,
                    Appellant

v.

POSTMASTER GENERAL OF THE UNITED STATES;
UNITED STATES POSTAL SERVICE;
JOHN DOES I-V; ABC CORPORATIONS I-V
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 3-10-cv-06737)
District Judge:  Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit LAR 34.1(a)
June 10, 2014
_____

Before: AMBRO, GREENBERG and BARRY, <u>Circuit Judges</u>

(Filed: June 27, 2014)
_____

OPINION
_____

BARRY, <u>Circuit Judge</u>

        Deborah Lanza filed this action against her employer, the United States Postal

Service ("USPS"), the Postmaster General of the United States, and other unnamed

persons and entities, alleging that she was subjected to discriminatory discipline in the workplace because of her sex, in violation of Title VII of the Civil Rights Act of 1964, and her disability, in violation of the Rehabilitation Act of 1973,[1] as well as in retaliation for initiating a workers' compensation proceeding. The District Court granted summary judgment on all claims in favor of appellees. We will affirm.

## I.

Lanza began working as a supervisor at the U.S. Post Office in Red Bank, New Jersey in 2003. On March 20, 2006, she injured her knee while at work, and underwent surgery in July of the following year. Within months of her 2007 surgery, she was placed on limited duty status. She filed a workers' compensation request for a partial impairment in October 2008 and was issued an award on December 17, 2008.

Pursuant to USPS policy, each night, the Red Bank Post Office transfers its mail to a processing facility in Monmouth, New Jersey. Nightly processing is important to the timely delivery of mail. Accordingly, the on-duty supervisor must ensure that the mail has been sent to the processing plant before leaving the post office.

On December 9, 2008, Lanza worked a shift from 4:00 a.m. to 2:00 p.m. Another supervisor, Judith Carter, was responsible for completing the daily operations at the post office, including overseeing transfer of the mail to the processing facility. Sometime

---

[1] In her amended complaint, Lanza contended that appellees also violated the Americans with Disabilities Act ("ADA") by discriminating against her on the basis of disability. The District Court granted judgment in favor of appellees on the ADA claim, finding that the Rehabilitation Act was Lanza's sole statutory vehicle for alleging a claim of disability discrimination against her federal employers. She does not challenge that ruling on appeal.

between 9:30 p.m. and 9:45 p.m., Carter called Lanza at her home and told her that there had been a power outage at the post office and the mail had not been sent out for processing. Lanza advised Carter to contact their immediate superior, Paul Lagana, the postmaster at the Red Bank Post Office.

Lanza arrived for her shift at approximately 3:00 a.m. and discovered that the previous day's mail had still not been sent to the processing plant. Lanza called Lagana and arranged to have the mail immediately taken to the Monmouth facility. Lagana recognized that failure to have the mail transferred was a "major breach of protocol," (S.A. 9), and expressed concern that he would be disciplined or fired for the delayed transfer. Ultimately, he received a disciplinary letter of warning in lieu of a 14-day suspension.

Lagana conducted a pre-disciplinary interview of Lanza on December 11, 2008, and issued a notice of proposed removal ("NPR") to both Lanza and Carter. Although Lanza was not on duty at the time she learned that the mail had not been transferred, Lagana believed that, once she had been informed of the problem, she had an obligation to attempt to resolve it and did not do so. He provided Lanza with a NPR on December 30, 2008. It stated that it constituted "advanced written notice that it is proposed to remove you from the Postal Service no sooner than 30 calendar days from the date of your receipt of this letter," (AA 33), and that Lanza could appeal or request mediation. She understood that the NPR did not suspend or demote her and that she could remain at work in her same position.

After receiving the NPR, Lanza left work before her shift ended and never returned. She met with her physician, who treated her for chest pain and a panic attack, and was later treated for depression and anxiety. She applied for, and eventually received, another award of workers' compensation benefits.

Meanwhile, Lanza appealed the NPR and the matter was submitted to mediation. On April 3, 2009, the USPS reduced her discipline from removal to a letter of warning in lieu of a 7-day suspension. Lanza further appealed, and, in June 2009, she received a letter from the USPS absolving her of any wrongdoing with respect to the December 9, 2008 incident and rescinding all discipline. No USPS employee told Lanza that she could not return to work and she always understood that she could resume her position at the post office.

Lanza filed this action on December 22, 2010, and amended her complaint ten months later. She claimed that the USPS issued the disciplinary NPR because of her sex and disability and in retaliation for filing a workers' compensation claim and obtaining a limited duty assignment. The District Court granted summary judgment in favor of appellees. This appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010). Summary

4

judgment is appropriate where the movant demonstrates that "there is no genuine dispute as to any material fact" and that he or she is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the evidence in the light most favorable to the non-moving party. *Anderson*, 621 F.3d at 267.

**III.**

No material facts are in dispute, and appellees are entitled to judgment as a matter of law on Lanza's discrimination and retaliation claims.

**A.     Title VII Claim**

Sex discrimination claims under Title VII are subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiff bears the initial burden of making out a prima facie case of discrimination, which requires a showing that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered "an adverse employment action"; and (4) the circumstances of the adverse action give rise to an inference of discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam). Once a plaintiff establishes a prima facie claim of discrimination, the burden shifts to the employer to offer a legitimate, nondiscriminatory rationale for its conduct. *Id.* If the employer meets this burden, the plaintiff must establish that the employer's proffered explanation is pretext for discrimination. *Id.*

Lanza has not established that the NPR constituted an adverse employment action. Drawing on the statutory language of Title VII, we have stated that "an adverse

5

employment action" is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Even before it was rescinded, the NPR, a preliminary warning of potential discipline, did none of those things.[2] Lanza was not demoted, suspended, or docked pay, and she could have remained at work.

Lanza nevertheless contends that, upon receiving the NPR, she was constructively discharged from her position, given the mental stress and physical illness that it induced. Constructive discharge will be found where "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Cardenas*, 269 F.3d at 263 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996)). Thus, whether a constructive discharge has occurred is measured against an objective standard. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). The harassment inflicted upon the worker must be severe and pervasive, even more so than that required to prove a hostile work environment. *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006). Notwithstanding Lanza's medical issues, we have little trouble concluding that receipt of the NPR—a document that held out only the possibility of discharge, provided avenues of appeal, and did not in any way alter the day-to-day conditions of her job—did not create a work environment so objectively intolerable that a reasonable

---

[2] Nor, for that matter, did the letter of warning in lieu of a 7-day suspension, which was also rescinded.

worker in her position would have resigned.

**B.    Rehabilitation Act Claim**

The Rehabilitation Act, like Title VII, employs *McDonnell Douglas'* burden-shifting scheme. *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). To establish a prima facie claim of discrimination under that statute, a plaintiff must show that: (1) she has a disability; (2) she is "otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer"; and (3) she was "nonetheless terminated or otherwise prevented from performing the job." *Id.* at 184-85 (internal quotation omitted). Again, Lanza's claim of disability discrimination falters because she cannot, for the reasons outlined above, demonstrate that the NPR terminated her or otherwise prevented her from performing her job.

**C.    Retaliation Claim**

Without identifying the law under which her claim arises, Lanza contends that the NPR constituted unlawful retaliation for filing a workers' compensation claim in October 2008 and receiving a limited duty assignment in 2007. Appellees argue that, whether analyzed under Title VII or the Rehabilitation Act, Lanza cannot make out a prima facie retaliation claim. We agree.

Both Title VII and the Rehabilitation Act forbid an employer from retaliating against an employee for opposing conduct otherwise prohibited by those anti-discrimination statutes or aiding in the investigation or prosecution of discrimination claims. 42 U.S.C. § 2000e-3(a) (Title VII); *id.* § 12203 (ADA); *see* 29 U.S.C. § 791(g)

7

(incorporating anti-retaliation provision of the ADA into the Rehabilitation Act). A prima facie claim of retaliation under either statute consists of three elements: (1) the plaintiff engaged in protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) there exists a causal connection between the adverse action and the protected activity. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Filing a claim for workers' compensation does not constitute protected activity under either the Rehabilitation Act or Title VII. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (finding that "[f]iling a workers' compensation claim is not something that is covered by the ADA" and that retaliation for making such a claim is not actionable under the ADA); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 n.8 (9th Cir. 2008) (finding that Title VII does not prohibit retaliation for filing a workers' compensation claim).

And, even assuming that Lanza's request for a limited duty accommodation in 2007 separately amounted to protected activity under the Rehabilitation Act, there is no suggestive temporal proximity or pattern of antagonism indicative of a causal nexus between her placement on limited duty status and Lagana's imposition of discipline at least a year later in December 2008. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *see also LeBoon*, 503 F.3d at 233 (noting that a gap of three months between protected activity and adverse action, without more, insufficient to establish causal connection).

8

## IV.

We will affirm the order of the District Court.