Filed 1/22/25  Clark v. City of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

MARK ALAN CLARK,

    Plaintiff and Appellant,

    v.

CITY OF LOS ANGELES et al.,

    Defendants and Respondents.

B335656

(Los Angeles County
Super. Ct. No. 23STCV05766)

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

Mark Alan Clark, in pro. per., for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs and Timothy Martin, Deputy City Attorneys, for Defendants and Respondents.

Mark Alan Clark appeals from a judgment entered after the trial court sustained without leave to amend the City of Los Angeles's (city) demurrer to Clark's first amended complaint (FAC). Clark filed this action after he retired from his position as an equipment superintendent for the Los Angeles Fire Department (LAFD). He alleged the city discriminated against him by failing to accommodate his religious beliefs and constructively discharged him, among other claims. The trial court sustained the city's demurrer without leave to amend on the grounds that Clark failed to sufficiently allege an adverse employment action or discrimination due to his religion. We find Clark has failed to state a claim for relief under any cause of action and affirm the judgment.

## FACTUAL BACKGROUND

LAFD employed Clark as an equipment superintendent.

In August 2021, the Los Angeles City Council enacted Ordinance No. 187134 (the ordinance), which required all city employees to become fully vaccinated against COVID-19, or to request an exemption from the vaccine mandate on the basis of a religious belief or medical condition that prevented the employee from receiving the vaccine. The ordinance required an employee with a religious exemption to take regular COVID-19 tests if the employee worked in person, but not if the employee worked remotely.

The city's exemption procedures required an employee to submit an exemption request to the employee's departmental personnel officer (DPO) or human resource (HR) director. The DPO or HR director then would submit a "preliminary assessment" to the personnel department's COVID-19 exemption

2

review unit, which was to make a "final determination." If the personnel department denied the exemption, the employee could appeal to the employee's department head or general manager.

In October 2021, Clark filed a request for exemption on the basis of a sincerely held religious belief. Clark was informed that if he filed the exemption request, he would be considered compliant with the ordinance during the pendency of the exemption and accommodation process.

In November 2021, LAFD's representative from its personnel services section, Irma Romanelli, interviewed Clark. Clark requested an exemption from the vaccine mandate and additionally requested an indefinite extension of his authorization to work remotely so he would not be required to take COVID-19 tests.

On November 16, 2021, Romanelli submitted LAFD's preliminary assessment of Clark's exemption request to the personnel department's COVID-19 exemption review unit. LAFD approved Clark's exemption request and recommended Clark be permitted to work remotely during the time the city remained in emergency status. LAFD did not inform Clark of its preliminary assessment. The exemption procedures did not require LAFD to inform Clark of its preliminary assessment, nor did it impose a time limit on the personnel department's final decision.

Clark worked remotely from home starting in June 2021 due to his wife's medical condition. He applied for and was granted modified intermittent family medical leave. Clark had a telephone conversation with Assistant Chief Richard Fields on December 1, 2021, in which Fields personally permitted Clark to continue to work remotely until March 2022. After that time, Clark would have to take early retirement or return to working

3

in person. Fields told Clark that his religious exemption request was still under review. Clark was also informed that if his request for exemption was denied, it could be appealed to the Fire Chief.

On January 3, 2022, LAFD extended the telecommuting option Department-wide due to a surge in a COVID-19 variant, but Fields disallowed this policy for employees under his command. Fields allowed Clark to continue working remotely and remain on city payroll, but only until Clark's early retirement date on or around Clark's 55th birthday in March 2022.

On January 7, 2022, Clark sent an e-mail to Norma Gutierrez, director of fire personnel, regarding preretirement expectations and obligations. In the e-mail, Clark expressed feeling pressured to retire early due to the COVID-19 requirements conflicting with his religious beliefs, and because Fields would only allow Clark to work remotely until he could retire early. On January 19, 2022, Gutierrez responded only to Clark's generic inquiry about retirement procedures and did not address Clark's statements about his religious beliefs and being forced to retire early.

On March 30, 2022, Clark reported to work for his last day in order to return his city-issued computer, identification and other LAFD items. Fields was present for part of the day. Clark conversed with Fields but Fields did not inform Clark of the status of his religious accommodation request. Clark retired on March 31, 2022, because the city had not eliminated the conflict between Clark's job and his religious beliefs.

In January 2023, the personnel department granted all pending requests for exemptions from the vaccine mandate.

4

About 5,500 COVID-19 vaccination exemption requests were submitted by city employees, and of these approximately 4,900 were still pending as of January 2023.  At least 80 percent of the 4,900 exemption requests pending at that time were based on religion.

## PROCEDURAL HISTORY

Clark filed this action on March 15, 2023, asserting nine causes of action against the city.  The trial court sustained the city's demurrer to the original complaint but permitted Clark to amend his second, third, fifth, sixth and seventh causes of action for violations of the California Fair Employment and Housing Act (FEHA) (Gov. Code, §§ 12900 et seq.) and his eighth cause of action for constructive discharge.

The operative FAC was filed on June 26, 2023.  Clark asserted six causes of action against the city: (1) retaliation in violation of FEHA; (2) religious creed discrimination/failure to accommodate in violation of FEHA; (3) failure to engage in the interactive process in violation of FEHA; (4) failure to prevent retaliation in violation of FEHA; (5) religious creed discrimination/disparate impact in violation of FEHA; and (6) constructive discharge/intolerable conditions.

The city demurred, arguing Clark had failed to allege an adverse employment action, that his religious exemption was granted, and that he failed to allege he was not fully accommodated.  As to Clark's cause of action for constructive discharge, the city argued it did not cause intolerable conditions as Clark's exemption was granted, and he was never forced to get vaccinated or to test for COVID-19.

On November 8, 2023, the trial court filed a written order sustaining the city's demurrer without leave to amend and dismissing the matter with prejudice, noting, "While it is true that City failed to inform Plaintiff that his religious accommodation had been granted, Plaintiff failed to await official confirmation about the status of his requested accommodation or await discipline for failing to comply with [the ordinance]. Instead, before suffering any injury, Plaintiff voluntarily retired rather than face the possibility of an adverse employment action. Any harm Plaintiff may have suffered remained speculative." The court added Clark continued working remotely and remained on the payroll. There was no substantial adverse change in the terms and conditions of his employment, therefore Clark failed to show an adverse employment action. Clark's request for religious accommodation was not subject to a claim for failure to engage in the interactive process, and he alleged no facts showing religious creed discrimination or disparate impact.

On January 5, 2024, Clark filed his notice of appeal from the judgment of dismissal.

## DISCUSSION

### I. Standards of review

On appeal from a judgment entered after an order sustaining a demurrer, we determine de novo whether the complaint alleges facts sufficient to state a cause of action under any legal theory. (*Chodosh v. Commission on Judicial Performance* (2022) 81 Cal.App.5th 248, 258.) We assume all properly pleaded material facts alleged in the complaint are true, but not contentions, deductions, or conclusions of fact or law. (*Ibid.*) We review the court's refusal to allow leave to amend

6

under the abuse of discretion standard.  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  We decide whether there is a reasonable possibility that the defect can be cured by amendment.  If it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion, and we affirm.  (*Ibid.*)

## II.    Failure to accommodate religious beliefs[1]

FEHA makes it unlawful for an employer to "discriminate against a person in compensation or in terms, conditions, or privileges of employment because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance . . . , but is unable to reasonably accommodate the religious belief or observance without undue hardship . . . ."  (Gov. Code, § 12940, subd. (*l*)(a).)  Where the employer excuses the employee from engaging in those duties that conflict with the employee's belief, there is no

---

[1]    Clark, who appears in propria persona, fails to specify which cause of action he is referring to throughout his opening brief.  However, he appears to focus on the city's alleged failure to accommodate his religious beliefs, constructive discharge, retaliation, and disparate impact claims.  We decline to address Clark's failure to engage in the interactive process claim and failure to prevent retaliation claim as Clark has not adequately appealed those claims.  (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1513 [appellants forfeit any contentions of error regarding the dismissal of a cause of action by failing to raise or address the contentions in their briefs on appeal].)

violation of this provision. (*Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1159.)

Here, the city reasonably accommodated Clark by excusing him from the requirement that employees undergo either a COVID-19 vaccine or COVID-19 testing. The city indefinitely excused Clark from vaccination pending its final decision on his request for a religious exemption. While Clark was informed he would have to regularly test for COVID-19 if he returned to work, he was never required to return to work. LAFD recommended the personnel department permanently exempt Clark from receiving a vaccine. After Clark voluntarily retired in March 2022, the city granted all pending exemption requests.

The city was not required to accommodate Clark by quickly granting his request for religious exemption. "Any reasonable accommodation is sufficient to meet an employer's obligations" to accommodate an employee's religious beliefs. (*Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 370 (*Soldinger*).) "[T]he employer need not adopt the *most* reasonable accommodation nor must the employer accept the remedy preferred by the employee." (*Ibid.*) Instead, the city reasonably accommodated Clark by excusing him from the requirements of the ordinance until his request for religious exemption was officially granted. Clark was excused from receiving a vaccine and was also permitted to work remotely so that he was not required to test for COVID-19. Clark failed to allege that anyone at the city demanded that he become vaccinated or test for COVID-19 at any time during his employment. The city provided

reasonable accommodation.[2]  "'[W]here the employer has already reasonably accommodated the employee's religious needs, the . . . inquiry [ends].'"  (*Ibid.*)

Clark cites *Young v. Southwestern Savings and Loan Association* (5th Cir. 1975) 509 F.2d 140, 145 (*Young*), for the proposition that "[a]ccommodation as a defense must be unsubtle, direct, undelayed and communicated without equivocation.  The statutory defense of accommodation is not met by some *post hoc* hypothesis."  *Young* involved a former employee who was required to attend a monthly staff meeting, which began with a short religious talk and a prayer.  As an atheist, the employee objected to the "theological appetizer."  (*Id.* at p. 142.)  Her employer pointed to a company policy, "known only to a few high-ranking officers," and admittedly unknown to the employee, that employees who objected to the devotionals would be permitted to miss that portion of the staff meetings.  (*Id.* at p. 144.)  Under these conditions, the court held the "secret policy" was insufficient to constitute accommodation.  (*Id.* at p. 145.)  Here, in contrast, Clark was directly informed he was not required to take the COVID-19 vaccine and was expressly permitted to work from home during his employment so he could decline to test for COVID-19.  The city's accommodation was not secret but was communicated clearly to him.

*Soldinger, supra,* 51 Cal.App.4th 345 is also unhelpful to Clark.  In *Soldinger*, the plaintiff requested a day off during the Jewish celebration of Passover.  After she informed her superiors

---

[2]     We decline to address Clark's argument that the trial court misunderstood the facts alleged in his FAC.  As we review the complaint de novo, the trial court's interpretation of the FAC is irrelevant.

of her bona fide religious beliefs and requested the time off, her employer did nothing. When she requested the day off, her superior informed her if she did not appear for work, she would be fired. (*Id.* at p. 373.) Because the employer did not explore any available alternatives, it violated its statutory obligation to accommodate because no undue hardship was established. (*Id.* at p. 374.) Clark's situation was completely different, in that he was fully accommodated, never required to test for COVID-19 or vaccinate, and never suffered any adverse employment action.

Clark asserts Government Code section 12940, subdivision (*l*) requires an employer to eliminate the conflict between an employee's religious beliefs and job requirements or demonstrate it has explored any available reasonable alternative means of accommodating the religious belief. Clark argues there are no facts showing the city did this, adding that allowing an employee to request an accommodation, but never acting on the accommodation, falls short of the city's obligations.

The city's formal approval of Clark's request for accommodation during the time of his employment was not necessary for the city to reasonably accommodate Clark, who was permitted to work from home from March 2020 through March 2021 and from June 2021 through March 2022. He attended work in person for one day on March 30, 2022, the day before his retirement. Clark did not allege he was ever required to test for COVID-19 or receive a vaccine.

While Clark's preference may have been for the city to grant his religious accommodation request earlier, "the employer need not adopt the *most* reasonable accommodation nor must the employer accept the remedy preferred by the employee." (*Soldinger, supra,* 51 Cal.App.4th at p. 370.) The city was not

10

required to rapidly implement Clark's preferred solution. Its decision to permit him to work from home, and not require him to get vaccinated or test for COVID-19 during the pendency of his accommodation request, was reasonable.

*EEOC v. AutoNation USA Corp.* (9th Cir. 2002) 52 Fed.Appx. 327 (*AutoNation*), cited for the first time in Clark's reply brief, supports this conclusion. In *AutoNation*, the obligation to work on Sundays conflicted with the beliefs of a devoutly Christian employee. AutoNation suggested possible accommodations, but the employee "short-circuited the interactive process required by Title VII . . . by resigning on the *first* day that discussions ensued." (*Id.* at p. 329.) The employee's resignation, "while discussions regarding potential accommodations were ongoing and in their early stages, violated his correlative duty to make a good faith attempt to satisfy his needs." (*Ibid.*) Accordingly, AutoNation was entitled to summary judgment on the former employee's claims. Similarly, here, Clark's resignation before the city granted his accommodation request, or had the opportunity to extend his other accommodations, undermines his failure to accommodate claim.[3]

---

[3]     *Burcham v. City of Los Angeles* (C.D.Cal. 2022) 562 F.Supp.3d 694, also cited for the first time in Clark's reply brief, similarly does not support his case. In *Burcham*, 13 Los Angeles Police Department employees sued the city and city representatives alleging constitutional and statutory violations based on the same COVID-19 mandate at issue here. The city's motion to dismiss the plaintiffs' FAC was granted. (*Id.* at p. 699.) As to the plaintiffs' claims for violation of FEHA, the court noted, "While Plaintiffs allege that they have submitted requests for

The city reasonably accommodated Clark's religious beliefs. Therefore, Clark has failed to state a claim for failure to accommodate those beliefs.

## III. Constructive discharge

"In order to establish a constructive discharge, an employee must plead . . . that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1251 (*Turner*).) "[A]n employee cannot simply 'quit and sue,' claiming he or she was constructively discharged.  The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.  The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." (*Id.* at p. 1246.)  "'"An employee is protected from . . . unreasonably harsh conditions, in excess of those faced by his [or her] co-workers.  He [or she] is not, however, guaranteed a working environment free of stress.'"'" (*Id.*

___

religious exemptions, at no point in the FAC do they state that those requests have been denied or are likely to be denied." (*Id.* at p. 708.)  Under those circumstances, the plaintiffs did "not plausibly allege that Defendants have discriminated, or threatened to discriminate, against them." (*Ibid.*)  Clark, whose FAC lacked the same allegations, similarly cannot state a claim for discrimination, threatened discrimination or failure to accommodate his religious beliefs.

at p. 1247.) "It is the working conditions themselves—not the plaintiff's subjective reaction to them—that are the sine qua non of a constructive discharge." (*Simers v. Los Angeles Times Communications, LLC* (2018) 18 Cal.App.5th 1248, 1274 (*Simers*).)

Clark asserts the temptation to violate his religious beliefs in order to remain employed constituted an intolerable condition and forced his early retirement. Clark's feelings of temptation were insufficient to constitute an intolerable working condition. The constructive discharge doctrine focuses on the objective perspective of a reasonable employer. (*Turner, supra*, 7 Cal.4th at p. 1251.) Clark's "subjective reaction" to the ordinance, and his speculation that he may have been required to test or vaccinate in the future in order to keep his job, do not constitute objective conditions a reasonable employer would understand to cause a forced resignation. (See *Simers, supra,* 18 Cal.App.5th at p. 1274.) Clark's subjective reaction to the ordinance and his concerns about future hypothetical employment scenarios do not constitute intolerable working conditions as a matter of law.

Given the city's indefinite excusal of Clark from working in person, receiving a vaccine, and getting tested for COVID-19, no reasonable employer would have felt resignation was Clark's only option. The city's delay in informing Clark that his exemption had been permanently granted was not so "extraordinary and egregious" as to "overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job." (*Turner, supra*, 7 Cal.4th at p. 1246.)

The cases cited by Clark are distinguishable. In *Johnson v. York Academy Regional Charter School* (M.D.Pa. 2023) 2023 WL 6448843, the plaintiff was refused an accommodation request.

13

She alleged that because her accommodation request was refused, she had no choice but to resign.  (*Id.* at p. *2.)  Because the plaintiff "adequately pleaded an adverse employment action," the district court found, "[a]s to the question of whether the alleged conditions were so intolerable a reasonable person in Johnson's position would have felt compelled to resign, we conclude that this is a fact intensive inquiry that is not amenable to resolution at the motion to dismiss stage." (*Id.* at p. *6.)  In other words, the plaintiff "asserted sufficient well-pleaded facts for [her] claim to proceed forward." (*Ibid.*)  Clark, who was accommodated throughout his employment, has failed to plead sufficient facts to proceed forward.

*Young, supra,* 509 F.2d at page 145 is similarly distinguishable in that the plaintiff's employer "demanded unconditional surrender to the company policy of compulsory attendance at religious services."  And *U.S. Equal Employment Opportunity Commission v. Consol Energy, Inc.* (4th Cir. 2017) 860 F.3d 131, 136–137, involved an employer that "refused to accommodate [the employee's] religious objection" to the use of a biometric hand scanner.  In contrast to these cases, the city never compelled Clark to become vaccinated or test for COVID-19.  The cases are factually distinguishable and unhelpful to Clark.

Clark has failed to sufficiently allege the city intentionally or knowingly permitted working conditions that were so intolerable or aggravated that a reasonable person would be compelled to resign.  Therefore, he has failed to state a cause of action for constructive discharge.

## IV.   Retaliation

FEHA prohibits an employer from retaliating against an employee for requesting a religious accommodation.  (Gov. Code,

§ 12940, subd. (*l*)(4).)  In order to state a prima facie case of retaliation, a plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)  Clark cannot make out a prima facie case of retaliation as he has failed to sufficiently allege an adverse employment action.

An adverse employment action for the purposes of a statutory retaliation claim is an act that has a "'substantial and material adverse effect on the terms and conditions of the plaintiff's employment.'" (*Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 641.)

Clark argues he suffered two adverse employment actions—a failure to accommodate his religious beliefs and the resulting alleged constructive discharge.  Clark cites *Storey v. Burns Internat. Security Services* (3d Cir. 2004) 390 F.3d 760, 764 for the proposition that "[a]n employer's failure to reasonably accommodate an employee's sincerely held religious belief that conflicts with a job requirement can also amount to an adverse employment action . . . ."

As set forth above, Clark has failed to allege an adverse employment action.  Clark does not allege he was demoted, suffered a reduction in compensation or benefits, was transferred, terminated, or any other notable change in his employment position.  In fact, he was permitted to work from home and was not required to receive a vaccine or COVID test at any time.  Clark's subjective reaction to the ordinance, and his unwillingness to wait for the final decision on his request for exemption, do not amount to adverse employment actions.

The cases Clark cites do not support his position that he suffered an adverse employment action. Clark cites extensively from the dissent in *Lawson v. State of Washington* (9th Cir. 2003) 319 F.3d 498, 501–502, and his citations are unpersuasive for that reason. Clark also cites extensively from federal law stating principles of law regarding adverse employment action. (Citing, e.g., *Hill v. Borough of Kutztown* (3d Cir. 2006) 455 F.3d 225, 247, fn. 32 ["[c]onstructive discharge is an adverse employment decision"]; *Lanza v. Postmaster General of the United States* (3d Cir. 2014) 570 Fed.Appx. 236, 240 ["Constructive discharge will be found where 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'"].) The facts Clark has alleged do not meet these legal doctrines.

Because he has failed to allege an adverse employment action, Clark's retaliation claims fail.

## V. Disparate impact

"[I]n a disparate impact case, a plaintiff must "'allege[] and prove[], usually through statistical disparities, that facially neutral employment practices adopted without a deliberately discriminatory motive nevertheless have such significant adverse effects on protected groups that they are 'in operation . . . functionally equivalent to intentional discrimination.'"" (*Mahler v. Judicial Council of California* (2021) 67 Cal.App.5th 82, 113 (*Mahler*).) The complaint "must allege facts or statistical evidence demonstrating a causal connection between the challenged policy and a significant disparate impact on the allegedly protected group." (*Id.* at p. 114.)

Clark fails to allege the necessary facts to support a claim of disparate impact. He claims the city's policy and practice was

16

to hold all religious accommodation requests in abeyance. However, the process for religious exemptions only applied to employees who requested religious exemptions, thus it was not ""'facially neutral.'"" (*Mahler, supra*, 67 Cal.App.5th at p. 113.) Further, Clark has failed to allege that individuals who requested religious exemptions suffered ""'significant adverse effects.'"" (*Ibid.*) Although other individuals with sincerely held religious beliefs were subjected to the same alleged policy of holding such requests in abeyance, Clark fails to allege any significant disparate impact on these individuals as a group. He fails to allege that other individuals resigned due to the alleged delay or suffered any other significant consequences. Thus, his allegations fail to sufficiently allege disparate impact.

Clark cites federal case law stating a disparate impact plaintiff need only allege facts supporting a reasonable inference that the challenged practice caused a disparate impact. (Citing *Frappied v. Affinity Gaming Black Hawk, LLC* (10th Cir. 2020) 966 F.3d 1038, 1054 ["Although plaintiffs do not need to establish a prima facie case in the complaint, we consider the elements of [a] disparate impact claim to help determine whether plaintiffs' claim is plausible."]; *Wu v. Special Counsel* (D.C. Circuit 2015) 2015 WL 10761295, *1 ["Although neither prima facie proof nor detailed factual allegations are necessary to withstand a Rule 12(b)(6) motion, . . . a complaint must nonetheless contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' . . . and 'must be enough to raise a right to relief above the speculative level.'"].) Clark has failed to allege a reasonable inference of disparate impact on individuals with sincere religious beliefs, as

17

he has failed to allege that anyone suffered a significant consequence from the city's delay.

Clark was required to allege facts or statistical evidence demonstrating a causal connection between the city's alleged delay in granting accommodation requests and a significant disparate impact on those with religious beliefs. (*Mahler, supra*, 67 Cal.App.5th at p. 114.) He did not do so, therefore the demurrer to this cause of action in Clark's FAC was properly sustained.

## VI. Leave to amend

Clark challenges the trial court's denial of leave to amend. Thus, he bears the burden to show a reasonable possibility that an amendment can cure the defects in his FAC. (*LeBrun v. CBS Television Studios, Inc.* (2021) 68 Cal.App.5th 199, 212.) Clark must "articulate the 'specifi[c] ways' to cure the identified defect[s]." (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145 (*Shaeffer*).) He has not done so.

First, Clark proposes to amend the FAC to change the title of the third cause of action to read "Failure to Demonstrate Exploration of Alternative Means of Accommodating Religious Belief." The caption change does not allege new facts to cure any of the defects described above. Thus, the amendment would be inconsequential.

Further, Clark proposes to amend the FAC to ask that the constructive discharge claim be bifurcated, so that after the issue is fully adjudicated, he can "more strongly allege the material change in working conditions." Again, Clark's request for bifurcation does not cure the factual deficiencies in the FAC.

Finally, Clark suggests he will amend his sixth cause of action for constructive discharge by changing his allegations that

18

the city "acted adversely against" him to allegations that these were "intolerable conditions" that caused him to retire. Clark asserts he will cite federal case law holding that conflict between one's faith and one's job requirements can subject a person of faith to work conditions so intolerable an employee's resignation is a constructive discharge. Clark's suggestion fails to allege facts that cure the defects in his FAC. Instead, he is merely re-labeling the existing facts. Those facts are insufficient to state a claim for constructive discharge.

Clark has failed to meet his burden of articulating specific ways to cure the defects in the FAC. (*Shaeffer, supra,* 44 Cal.App.5th at p. 1145.) The trial court did not abuse its discretion in declining to grant him leave to amend.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs of appeal.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
RICHARDSON, J.

19