Filed 4/29/26  Rinard v. Alhambra Unified School Dist. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CANDY RINARD et al., | B339287 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 22STCV21716) |
| ALHAMBRA UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Wendy Chang, Judge. Affirmed.

Watkins & Letofsky, Daniel R. Watkins and Armando M. Galvan for Plaintiffs and Appellants.

Kessel & Megrabyan, Elizabeth M. Kessel, Armineh Megrabyan and Martha Cohen for Defendant and Respondent.

————————————

Plaintiffs Candy Rinard, Erika Calderon, Amanda Kirkpatrick, Yesenia Lira, Julian Lopez, Danielle Massaro, Lisa Massaro, Elaine Ramos, Alexis Rojas, Gabriela Tesoriero, Melanie Valenzuela, and Jessica Vargas appeal the trial court's summary judgment in their California Fair Employment and Housing Act (FEHA; Gov. Code,[1] § 12900 et seq.) action against their former employer, defendant Alhambra Unified School District (AUSD). Because the court correctly concluded there were no triable issues of material fact, we affirm.

## FACTUAL BACKGROUND

Plaintiffs were employees of AUSD, a school district that operated 13 K-8 elementary schools, three high schools, and special education programs. AUSD served around 15,000 students and had around 2,000 employees. Rinard was a health assistant. Calderon supervised students before school, after school, and during breaks. Kirkpatrick was an office manager. Lira was a guidance office secretary. Lopez was a warehouse foreman. Danielle and Lisa Massaro were instructional aides who worked with special education students. Ramos was an attendance office manager. Rojas was a behavioral intervention assistant who worked with students with disabilities. Tesoriero was a Spanish teacher. Valenzuela was a food service cook and manager. Vargas was an English teacher.

In response to the COVID-19 pandemic, AUSD offered remote instruction in March 2020 through the end of that school year and for the entire 2020–2021 school year. For the 2021–2022 school year, AUSD returned to in-person learning.

---

[1] Undesignated statutory references are to the Government Code.

As fall 2021 neared, the highly transmissible Delta variant of the COVID-19 virus led to a surge of infections in Los Angeles County. At that time, AUSD was already requiring students and employees to regularly test for COVID-19, wear a mask, and maintain social distancing (i.e., nonpharmaceutical protocols). AUSD also had a quarantine policy, under which asymptomatic individuals who had close contact with an infected person had to quarantine for seven days and symptomatic individuals had to quarantine for 10 days. After considering the advice of public health agencies and determining these policies alone were insufficient to prevent the spread of COVID-19, AUSD also approved a policy requiring all of its employees to be vaccinated and submit proof of vaccination by October 31, 2021. The policy subjected any noncompliant employee to discipline unless they obtained an exemption.

On September 15, 2021, Assistant Superintendent John Scanlan notified employees of this vaccination policy. After Plaintiffs sought a religious accommodation, AUSD sent Plaintiffs an individual questionnaire to gather information about their requests and determine whether accommodations were possible. In Plaintiffs' responses, they informed AUSD the vaccines were developed using material originating from an aborted fetus, and receiving a vaccine would make them participants in voluntary abortions, which is offensive to their religious teachings. They also believed their bodies are religious temples and receiving the vaccine would defile their bodies. Plaintiffs requested as an accommodation they be allowed to continue the prior practice of weekly testing and masking in lieu of being vaccinated. Plaintiffs' requests did not mention AUSD's quarantine protocols.

AUSD did not question the sincerity of Plaintiffs' religious beliefs. AUSD, however, denied the exemption requests on the basis an exemption would compromise workplace safety and impinge on the rights of other employees and students. AUSD also considered alternative accommodations such as changes in work assignments or hours but concluded these options were not feasible or adequate to promote workplace safety. In what AUSD described as a final attempt to accommodate Plaintiffs, it placed Plaintiffs on unpaid leave effective November 1, 2021.

In mid-November 2021, AUSD advised Plaintiffs their unpaid leave would expire on December 1, 2021, after which they would be subject to termination unless they provided proof of vaccination. After Plaintiffs failed to submit proof of vaccination, AUSD terminated each of Plaintiffs' employments except for Vargas and Tesoriero, who resigned, and Lisa Massaro, who retired.

**PROCEDURAL HISTORY**

In July 2022, Plaintiffs filed this action against AUSD alleging five FEHA violations. Below, Plaintiffs conceded to the dismissal of the interactive process and harassment causes of action. On appeal, Plaintiffs do not raise any argument regarding the dismissal of the discrimination and retaliation causes of action. The only cause of action which Plaintiffs argue for reversal on appeal is the failure to accommodate religious belief or observance.

The trial court summarily adjudicated this cause of action when it granted AUSD's motion for summary judgment. In its ruling, the court first excluded the declarations of Plaintiffs' experts Janci C. Lindsay, Ph.D., and Jeffrey I. Barke, M.D., and portions of Plaintiffs' declarations. The court then concluded

4

section 855.4 immunized AUSD from liability under FEHA. In the alternative, the court also found there was no triable issue of material fact as to any remaining FEHA cause of action, so that summary judgment was appropriate. The failure to accommodate religious belief cause of action failed because AUSD showed it initiated good-faith efforts to accommodate Plaintiffs and demonstrated no reasonable accommodation was possible without imposing undue hardship.

Plaintiffs timely appealed. (See Cal. Rules of Court, rule 8.104(d)(2).)

## DISCUSSION

As noted, the trial court concluded section 855.4 barred Plaintiffs' entire action. The court, however, also summarily adjudicated the cause of action for failure to accommodate on the basis there were no triable issues of fact. Because the latter provides us with a sufficient basis to affirm, we need not and do not address the applicability of section 855.4. (See *Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 976, fn. 31 [appellate courts may affirm summary judgment if correct on any legal theory as long as parties had opportunity to address the issue below]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 ["appellate courts will not address issues whose resolution is unnecessary to disposition of the appeal"].)

## I.    Standard of Review

We review de novo the trial court's order granting a defendant's motion for summary judgment. (*Guz v. Bechtel Nat., Inc.* (2000) 24 Cal.4th 317, 334.) We view the evidence in the light most favorable to the nonmoving party and decide whether there is a triable issue of any material fact. (*Serri v. Santa Clara*

*University* (2014) 226 Cal.App.4th 830, 859; see also Code Civ. Proc., § 437c, subd. (c).)

As for the trial court's rulings on evidentiary objections, appellate courts are split whether to review those decisions de novo or for an abuse of discretion. (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226 (*Alexander*); see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [declining to resolve the split in authority].) We need not resolve this issue because our decision is the same under either standard.

## II.     The Trial Court Did Not Err in Excluding the Declarations of Plaintiffs' Experts

Under Evidence Code section 720, "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (*Id.,* subd. (a).) "[T]he field of expertise must be carefully distinguished and limited" (*People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 37), and "[q]ualifications on related subject matter are insufficient" (*People v. Hogan* (1982) 31 Cal.3d 815, 852, disapproved on other grounds by *People v. Cooper* (1991) 53 Cal.3d 771, 836).

Even if a witness is qualified as an expert, "under Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771– 772.) "This means that a court may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning. 'A court may

conclude that there is simply too great an analytical gap between the data and the opinion proffered.' " (*Id.* at p. 771.)

" '[T]he gatekeeper's focus "must be solely on principles and methodology, not on the conclusions that they generate." ' [Citation.] 'The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed.' [Citation.] An 'expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact. [Citation.] Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.' " (*Alexander*, *supra*, 23 Cal.App.5th at p. 225.)

The trial court appropriately concluded Lindsay did not establish expertise in the subject matter in question, specifically infectious disease control, immunology, public health, viral transmission, or COVID-19 transmission. Lindsay holds doctorates in biochemistry and molecular biology and held herself out as having 30 years of scientific experience "primarily in the area of Toxicology." Lindsay stated she has expertise in immunology through investigating exposures to chemicals, drugs, et cetera, and she was "well acquainted with" the effects caused by various viruses and gene therapies relating to COVID-19. But expertise on the possible effects of COVID-19 or its vaccines was not at issue in this request for accommodation case. Rather, the issue centered on whether vaccinations or nonpharmaceutical protocols were effective steps to prevent disease or combat transmission. Thus, the court did not err in concluding Lindsay

7

failed to establish she was medically and scientifically qualified to testify regarding the relevant topics of epidemiology, infectious disease control, public health, viral transmission, or COVID-19 transmission as it related to the accommodations sought.

The trial court also appropriately concluded Barke, a family medicine doctor who has treated over 1,000 patients with COVID-19, was not qualified to testify regarding vaccine efficacy because he was not an expert on epidemiology, infectious disease control, immunology, public health, viral transmission, or COVID-19 transmission.

Even if Lindsay and Barke were qualified, the trial court properly acted as a gatekeeper to exclude their unsupported opinions. Both experts included virtually the same paragraphs in their declarations, opining, among other things, that unvaccinated employees did not present a substantial risk of contracting or transmitting COVID-19, vaccinated employees presented the same contraction and transmission risk, receiving the vaccine presented greater health risks than remaining unvaccinated, and allowing unvaccinated employees to continue working at AUSD would not be undue hardship. To support these opinions, they cited a study of a private wedding in Barnstable, Massachusetts, and minute-long YouTube excerpts of interviews with CDC Director Rochelle Walensky and Dr. Anthony Fauci. But neither the research study nor YouTube excerpts were presented to the trial court, and the descriptions of them did not support either expert's sweeping opinions. At best, they supported the assertion that the vaccines did not fully prevent the transmission of COVID-19. Nothing in those materials supported the broader assertion that remaining unvaccinated did not pose a substantial risk of contracting or transmitting COVID-

19. The materials certainly did not support the assertions that vaccines presented the same risk of contracting COVID-19, posed a greater risk to the recipient's general health, and provided no greater protection than that provided by masking and testing alone.

None of Plaintiffs' arguments convinces us otherwise. Plaintiffs contend the trial court applied an overly stringent standard for admitting expert testimony because courts are required to liberally construe opposition papers at the summary judgment stage. It is true, as Plaintiffs point out, that *Sargon*, *supra*, 55 Cal.4th 747 concerned the admissibility of expert testimony at trial, and courts have held the rule requiring courts to liberally construe the evidence submitted in opposition to summary judgment applies to rulings on the admissibility of expert testimony. (See, e.g., *Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 524.)

Nonetheless, limitations remain. First, "the summary judgment statute still requires the evidence provided in declarations to be *admissible at trial*." (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 541.) Second, experts do not have carte blanche to express any opinion within their area of expertise; courts may still exclude expert opinions submitted in opposition to summary judgment that are based on assumptions without evidentiary support. (*Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155.) Even when the Lindsay and Barke declarations are liberally construed, these witnesses did not support their qualifications and opinions with adequate foundation.

Plaintiffs also criticize the trial court for several remarks it made at the summary judgment hearing. Specifically, Plaintiffs

argue the court's references to the federal *Daubert²* standard and its own experience with COVID-19 demonstrated the court's legal analysis was wrong. The court's comments at oral argument, however, do not warrant reversal because the final ruling issued after oral argument is devoid of any such references.(*Jie v. Liang Tai Knitwear Co.* (2001) 89 Cal.App.4th 654, 667, fn. 9 ["[A] trial judge's oral remarks or opinions, not embodied in the written findings or judgment, may not be used to impeach the findings or judgment."].) And even if the court had relied upon such matters, appellate courts will not disturb a ruling, itself correct in law, merely because the trial court gave a wrong reason. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

In short, Plaintiffs did not demonstrate the trial court erroneously excluded the Lindsay and Barke declarations.

## III. There Are No Triable Issues of Fact as to the Failure to Accommodate Cause of Action

FEHA prohibits an employer from "discriminat[ing] against a person . . . because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." (§ 12940, subd. *(l)*(1).)

To make out a prima facie case for relief, the plaintiffs must first show they "sincerely held a religious belief; the employer was aware of that belief; and the belief conflicted with

---

²    *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579.

an employment requirement." (*California Fair Employment & Housing Com. v. Gemini Aluminum Corp.* (2004) 122 Cal.App.4th 1004, 1011 (*Gemini*); see also *Soldinger v. Northwest Airlines, Inc.* (1996) 51 Cal.App.4th 345, 370 (*Soldinger*).)

AUSD did not dispute Plaintiffs made out a prima facie case for relief. The burden thus shifted to AUSD to "establish that 'it initiated good faith efforts to accommodate *or* no accommodation was possible without producing undue hardship.' " (*Gemini*, *supra*, 122 Cal.App.4th at p. 1011, italics added.) Because AUSD demonstrated no reasonable accommodation was possible without undue hardship, we need not and do not address whether AUSD initiated good-faith efforts to accommodate.

### A. AUSD Demonstrated No Reasonable Accommodation Was Possible

" '[T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any *reasonable* accommodation without such hardship.' " (*Soldinger*, *supra*, 51 Cal.App.4th at p. 371, italics added.) When an employer fails to "explore any available alternatives, it violate[s] its statutory obligation to accommodate unless [it] establishe[s] that any *reasonable* accommodation would have caused it an undue hardship." (*Id.* at p. 373, italics added.)

" 'Undue hardship' " is defined as "an action requiring significant difficulty or expense, when considered in light of the following factors: [¶] (1) The nature and cost of the accommodation needed. [¶] (2) The overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility,

11

and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility. [¶] (3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities. [¶] (4) The type of operations, including the composition, structure, and functions of the workforce of the entity. [¶] (5) The geographic separateness or administrative or fiscal relationship of the facility or facilities." (§ 12926, subd. (u); see also *Petersen v. Snohomish Regional Fire and Rescue* (9th Cir. 2025) 150 F.4th 1211, 1217 (*Petersen*) [analyzing undue hardship under federal law]; *Soldinger*, *supra*, 51 Cal.App.4th at p. 370, fn. 11 ["California courts look to . . . federal cases . . . in evaluating failure to accommodate allegations"].) This includes analyzing the effect of the accommodation on coworkers, to the extent that effect bears upon the conduct of the employer's business. (*Groff v. DeJoy* (2023) 600 U.S. 447, 472.)

We evaluate AUSD's decision at the time Plaintiffs requested an exemption from the vaccine mandate—that is, in the context of the COVID-19 pandemic during fall 2021. (See *Petersen*, *supra*, 150 F.4th at p. 1222 ["Nor can we judge [an employer] with the clarity of hindsight or the benefit of post-pandemic debates over what measured responses frontline employers should have taken."].)

### 1. Plaintiffs' Masking, Testing, and Quarantining Accommodation Posed Undue Hardship

The trial court correctly determined AUSD demonstrated it would have been undue hardship for it to accommodate Plaintiffs in fall 2021 by allowing them to continue working in their

12

positions, onsite, unvaccinated, while abiding by masking, testing, and quarantining protocols. Specifically, the court determined: "testing contained a lag time that would not allow the [AUSD] to be able to effectively exclude the infected person prior to infecting others, the 'constant, unpredictable' disruption, loss of productivity, reduction in resources and services caused by infections or monitoring for infections at a time when adequate staffing was critical to assist with the need to clean the facilities, enforce social distancing and mask wearing among the students [many of whom could not be vaccinated], and that such would also require additional resources to repeat test and monitor quarantining employees who were out ill." (Brackets in original.)

Plaintiffs argue we must reverse summary judgment because the trial court applied the incorrect legal standard for undue hardship. According to Plaintiffs, the citation to *Doe v. San Diego Unified School District* (9th Cir. 2021) 19 F.4th 1173 indicates the court applied a less stringent " 'more than de minimis' " standard.

Although the trial court cited *Doe*, it did so for the proposition an employee's request for an exemption from the COVID-19 vaccination mandate can be denied on undue hardship grounds because the accommodation would increase the risk of the spread of COVID-19 to other employees or to the public. Nowhere in the court's ruling is any reference to the " 'more than de minimis' " standard. To the contrary, the court explicitly found AUSD demonstrated the accommodation would cause a "significant hardship," which is consistent with FEHA's "significant difficulty or expense" standard. (See § 12926, subd. (u).)

We agree AUSD showed, through the declaration of Scanlan, that it would suffer undue hardship in accommodating Plaintiffs in light of the significant health or safety and operational burdens it would impose in the context of the extraordinary challenge presented by the COVID-19 pandemic. (See *Petersen*, *supra*, 150 F.4th at p. 1218 [discussing those categories for undue hardship in a Title VII case].)

**Health and Safety Burdens.** (See § 12926, subd. (u)(2), (4).) The health and safety of AUSD's students, teachers, and staff (including Plaintiffs) would be jeopardized by allowing Plaintiffs in fall 2021 to work onsite, unvaccinated, with a masking, testing, and quarantining protocol. COVID-19 posed serious health risks, and information from public health agencies led AUSD to believe the COVID-19 vaccines were safe and highly effective at curbing its spread and preventing serious illness, hospitalization, and death. The majority of new infections were occurring in unvaccinated people, and masking and social distancing alone were not sufficient to stop transmission, which was surging in fall 2021 due to the Delta variant. Further, because children under 12 were not eligible to be vaccinated in fall 2021, the fact that a substantial number of AUSD's student population were not protected created an enhanced need for eligible adults to be vaccinated. Thus, the record shows allowing Plaintiffs to work without being fully vaccinated presented a significant risk of substantial harm to Plaintiffs themselves and to others in the workplace, including thousands of children, and thus impaired AUSD's ability to provide a safe workplace for employees and a safe learning environment for students.

**Operational Burdens.** (See § 12926, subd. (u)(2), (4).) Allowing Plaintiffs to work onsite, unvaccinated, with a masking,

testing, and quarantining protocol would also impose substantial operational burdens on AUSD. At the time AUSD implemented the vaccine mandate, it required asymptomatic employees and students who had close contact with an infected person to quarantine for seven days, even if they tested negative. AUSD also required symptomatic individuals to quarantine for 10 days. The presence of unvaccinated individuals, with their associated higher risk of COVID-19 infection, made work disruptions more likely. Thus, the record shows accommodating Plaintiffs would have caused operational burdens by exposing AUSD to significant employee and student absenteeism as a result of COVID-19 illness and quarantine.

In light of these substantial burdens, the trial court correctly concluded allowing Plaintiffs to remain onsite in their positions, unvaccinated, with a masking, testing, and quarantining accommodation imposed undue hardship upon AUSD.

Plaintiffs suggest AUSD misframed the undue hardship standard by setting an ideal maximum goal, like achieving the safest possible workplace, and claiming an accommodation posed undue hardship by preventing them from reaching that unrealistic goal. We need not address this contention as the record shows Plaintiffs' suggested accommodation imposed undue hardship on AUSD, irrespective of its desired safety goals.

### 2. Plaintiffs Failed to Show a Triable Issue of Fact Regarding Undue Hardship

We also conclude the trial court correctly found Plaintiffs failed to show a triable issue of material fact exists as to the existence of undue hardship on AUSD.

15

Plaintiffs presented no admissible evidence to rebut AUSD's showing. On appeal, Plaintiffs point to their expert declarations. But as discussed in part II, *ante*, the declarations were inadmissible, making them incapable of raising a triable issue. Plaintiffs also cite portions of their declarations that were excluded by the trial court. Because Plaintiffs do not challenge these rulings on appeal, "we exclude this evidence from our review of the summary judgment motion." (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1181.)

Plaintiffs also claim the very fact AUSD relied on masking, testing, and quarantining protocols for 18 months before the vaccine mandate creates a triable issue of fact that continuing these protocols would not have caused any disruption. But we evaluate AUSD's decision at the time it refused to accommodate Plaintiffs and do not consider with the clarity of hindsight what it previously tried to do. (See *Petersen*, *supra*, 150 F.4th at p. 1222.)

The record shows masking, testing, and quarantining were inadequate in fall 2021 to protect the health and safety of AUSD students and employees. It was also inadequate to prevent operational disruptions. Masking would have provided an additional layer of protection, but it was not sufficient to mitigate the risk of contracting COVID-19. Although AUSD could have tested employees daily or weekly, there was a 36- to 48-hour lag time that prevented AUSD from effectively excluding the infected person before they affected others. And if an employee displayed COVID-19 symptoms or became exposed to an infected person, they had to quarantine 10 to seven days, which in turn required AUSD to divert resources needed elsewhere to compensate for that employee's absence. Thus, reliance on masking, testing, and quarantining would not have prevented the spread of infections

16

or diminished the potential for unpredictable absences of key staff; that nonpharmaceutical interventions were used in the past does not show a triable issue of material fact that accommodating Plaintiffs in fall 2021 by allowing them to work onsite, unvaccinated, with those interventions was not undue hardship.

Plaintiffs also argue AUSD's claim of future risk of illness was hypothetical and insufficient to demonstrate undue hardship. On this point, the Ninth Circuit's opinion in *Petersen*, *supra*, 150 F.4th 1211 offers us guidance. There, the court held the defendant could not have accommodated their firefighters' religious objections to the COVID-19 vaccine mandate without undue hardship. (*Id.* at p. 1213.) In holding so, the court considered risks to the health and safety of both the other firefighters and the public and the impact on the defendant's operations given the potential for widespread absences. (*Id.* at pp. 1218–1222.) Addressing the firefighters' argument the mere risk of hypothetical harms cannot constitute undue hardship, the court rejected the notion undue hardship equates to " 'realized hardships' "; undue hardship "may include an evaluation of the risk of hardship, not just an accounting of damages actually suffered" provided the risk is realistic and not merely hypothetical. (*Id.* at pp. 1221–1222.)

Here, Scanlan's declaration supplies this evidence. As detailed in part III.A.1., *ante*, there is evidence accommodating Plaintiffs would have risked causing AUSD's students and employees to contract or be exposed to COVID-19, ultimately jeopardizing their health or interfering with AUSD's operations due to unpredictable absenteeism.

Plaintiffs' attempts to distinguish *Petersen* are not persuasive. Plaintiffs first point out *Petersen* was a Title VII

17

federal case rather than a California FEHA case. As already noted, "California courts look to federal cases . . . in evaluating failure to accommodate allegations." (*Soldinger*, *supra*, 51 Cal.App.4th at p. 370, fn. 11.) Plaintiffs' contention is also undercut by the fact Plaintiffs' undue hardship analysis centers around *Groff*, *supra*, 600 U.S. 447, a federal Title VII case.

Plaintiffs also argue this case is different from *Petersen* because AUSD's evidence of future harm comes from Scanlan, a lay witness who Plaintiffs claim was incompetent to offer testimony supporting AUSD's undue hardship defense. For several reasons, the argument is not well taken.

First, AUSD overstates what Scanlan said in his declaration. It is not true, as Plaintiffs contend, that Scanlan offered personal beliefs not backed with any data and essentially played the role of medical expert despite not being one. He testified he was a human resources administrator familiar with personnel decisions relating to all AUSD employees. In that capacity, he was familiar with the considerations that led to AUSD's vaccine mandate, such as information from public health agencies that the COVID-19 vaccines were safe and effective at curbing the spread of COVID-19, as well as the burdens that would be caused by accommodating Plaintiffs' religious beliefs. He detailed those considerations in his declaration, and his testimony is competent evidence to support AUSD's undue hardship defense. (See *Rodrique v. Hearst Communications, Inc.* (1st Cir. 2025) 126 F.4th 85, 88, 91–94 [relying on declaration from human resources personnel to hold accommodating the plaintiffs' religious objections to COVID-19 vaccine mandate would constitute undue hardship under Title VII].)

18

Second, Plaintiffs premise their attack on Scanlan's declaration on the notion an employer must back up claims of potential harm to others with medical evidence, but Plaintiffs' only support for this position comes from the disability context. In disability cases, employers may refuse to hire or discharge employees if their condition renders them incapable of performing their duties in a manner that would not endanger their health or safety or the health or safety of others. (§ 12940, subd. (a)(1), (2).) To establish this "health or safety risk" defense, employers must introduce medical evidence demonstrating the employee posed a health or safety risk to themselves or others. (See *Raytheon Co. v. Fair Employment & Housing Com.* (1989) 212 Cal.App.3d 1242, 1251–1252; Cal. Code Regs., tit. 2, § 11067, subd. (e).) Plaintiffs provide no similar requirement in the religious accommodation context.

In any event, Scanlan's declaration established AUSD based its vaccine mandate on reliable medical advice. He stated, "In deciding to adopt a vaccine mandate for employees, [AUSD] also took into consideration information from the [CDC] and the Los Angeles County Department of Public Health, among other public health agencies, that the available COVID vaccines were safe and highly effective at curbing the spread of COVID-19 and preventing serious illness, hospitalization and death, that the majority of new COVID-19 infections were occurring in people who had not been vaccinated against COVID, and that masking and social distancing alone were not sufficient to stop the transmission of COVID-19 (especially with respect to the [Delta] variant)."

Finally, although Plaintiffs include a stray assertion the trial court erroneously admitted Scanlan's declaration, they have

19

not supported that with any argument the court erroneously overruled their objections to the declaration. Accordingly, Scanlan's testimony remains competent evidence in the record, and we may consider it on appeal. (See *Fritelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 [the appellants forfeited contentions of error regarding the trial court's evidentiary rulings by failing to attack them on appeal]; *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 (*Adam*) [bare assertions of error are insufficient; "an appellant must supply the reviewing court with some cogent argument supported by legal analysis . . . ."].)

Plaintiffs also criticize AUSD for making a blanket immunization decision without individually assessing the medical conditions and work responsibilities of each Plaintiff. But again, Plaintiffs' only support for this position comes from inapposite disability cases addressing the health or safety risk defense. An employer can only establish this defense by conducting an individual inquiry into the employee's medical condition. (*Sterling Transit Co. v. Fair Employment Practice Commission* (1981) 121 Cal.App.3d 791, 798; *E.E.O.C. v. United Parcel Service, Inc.* (9th Cir. 2005) 424 F.3d 1060, 1075.) Plaintiffs point to no authority holding employers must make a similar showing in the religious accommodation context. To the extent Plaintiffs' reasoning has some persuasive force, Plaintiffs submitted no evidence showing how individualized assessments of their medical conditions could have made a difference.

In sum, the trial court correctly concluded there were no triable issues of fact as to the religious accommodation cause of action.

## IV. Plaintiffs Forfeited Their Due Process Argument

Plaintiffs lastly argue the trial court violated their right to due process by considering the undue hardship defense, which AUSD did not allege in the answer, and by continuing the summary judgment hearing five days to cure AUSD's one-day-late summary judgment motion. Plaintiffs forfeited this argument by not making it below. (See *Briley v. City of West Covina* (2021) 66 Cal.App.5th 119, 138.) In any event, it is uncontested AUSD did plead as affirmative defenses both failure to state an actionable failure to accommodate claim as well as that AUSD's actions were taken for legitimate, nondiscriminatory reasons. Plaintiffs also forfeited this argument by failing to provide any analysis as to how the court's actions violated their due process rights or caused them prejudice. (*Adam*, *supra*, 211 Cal.App.4th at pp. 286–287.)

## DISPOSITION

The judgment is affirmed. AUSD is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1).)


RICHARDSON, J.

WE CONCUR:


CHAVEZ, Acting P. J.


GOORVITCH, J.*

---

*         Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21